UNITED STATES DISTRICT COURT     b
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CAMERON EVANS | CIVIL ACTION NO. 1:14-CV-02255 |
| VERSUS | CHIEF JUDGE DRELL |
| VIDALIA DOCK & STORAGE COMPANY | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

I.     Background

    A.     Procedural Background

Before the Court is a Seaman's Complaint for damages filed pursuant to 46 U.S.C. §§ 30104, 30105 (the Jones Act), 28 U.S.C. § 1333, and general maritime law by plaintiff Cameron Evans ("Evans") (a resident of Mississippi) on July 3, 2014 (Doc. 1). Evans named Vidalia Dock & Storage Company ("Vidalia"), a corporation authorized to do and doing business in Louisiana, as the defendant. Evans asserts claims against Vidalia pursuant to both the Jones Act and general maritime law.[1]

Vidalia answered the complaint and made a jury demand (Doc. 5). Vidalia filed third party claims against Natchez-Adams County Port Commission (the "Port Commission") (a Mississippi state entity doing business with Louisiana entities) and Bruce Oakley, Inc. ("Oakley") (an Arkansas Corporation doing business in Louisiana)

---

[1] Evans alleges he was a Jones Act seaman employed by Vidalia and assigned to the M/V Betty M. Jenkins on and before May 15, 2014. Evans contends that, on May 15, 2014, he was instructed to take a pump on board a sinking barge owned by Bruce Oakley, Inc., the BOI 227. However, the salvage attempt was abandoned and the BOI 227 sank, causing the M/V Betty M. Jenkins to be tossed. Evans fell on deck and was injured.

pursuant to Fed.R.Civ.P. 14(c) (third party tender under admiralty law) and, alternatively, Fed.R.Civ.P. 14(a) (third party claim under the Jones Act) (Docs. 16, 32). Vidalia alleges claims of unseaworthiness and negligence against Oakley and the Port Commission (Docs. 16, 32). Vidalia seeks contribution and/or indemnity for Evans's claims, attorney fees, costs, and legal interest (Doc. 32).

Vidalia alleges that Oakley was liable for Evans's injuries because the BOI 227 was unseaworthy, and because Oakley was negligent (Docs. 16, 32). Oakley filed a motion to dismiss (Doc. 22) Vidalia's claim that the BOI 227 was unseaworthy, which was granted (Doc. 47). Vidalia appealed (Doc. 50), and the Fifth Circuit affirmed the District Court's ruling.

Vidalia alleges the Port Commission was negligent because it used insufficient and/or substandard lines, knots, and crew oversight to moor the BOI 227, allowing the BOI 227 to break away and drift (Docs. 16, 32). Vidalia further alleges the Port Commission did not properly unload the BOI 227 (Docs. 16, 32). Because the BOI 227 drifted away, Vidalia was employed to retrieve it. The BOI 227 sank because the uneven load of sand in the BOI 227 caused the bow to submerge, allowing water in through the unsealed hatches. Evans was injured during the salvage attempt (Docs. 16, 32).

The Port Commission filed a motion to dismiss the claims alleged in Vidalia's original third party complaint, alleging lack of jurisdiction and failure to state a claim (Doc. 27), which was denied (Doc. 48). The Port Commission answered Vidalia's third-party complaint, asked for a jury trial, and made a counterclaim for negligence

in attempting to tow a barge that had a disproportionately weighted bow (due to unloaded sand) and unsealed hatch covers on and/or near the bow (Doc. 52). The Port Commission contends that Vidalia's negligence in attempting to tow the BOI 227, despite its obviously unseaworthy condition, caused it to sink (Doc. 52). Vidalia answered the counterclaim (Doc. 54).

The Port Commission, Vidalia, and Evans then filed a joint motion for partial dismissal (Doc. 56), agreeing to dismiss Evans's claims against the Port Commission, Vidalia, and Oakley. Vidalia and the Port Commission also agreed to dismiss Vidalia's third-party complaint against the Port Commission, and all other cross-claims and incidental demands for contribution and indemnity between them that are related Evans's personal injury claims (Doc. 56). That motion was granted (Doc. 57). The parties specifically reserved all claims between Vidalia, Oakley, and the Port Commission related to the property damage claims of Oakley, and Vidalia's third-party claims against Oakley (Doc. 56).

Oakley filed a second motion to dismiss (Doc. 44), asking the Court to dismiss Vidalia's negligence claims that were alleged in the amended third party complaint. Vidalia filed a response (Doc. 48), to which Oakley replied (Doc. 49). Oakley's motion to dismiss (Doc. 44) is now before the court for disposition.

B. <u>Vidalia's Factual Allegations</u>

Vidalia alleges that Oakley was the owner of the BOI 227, but that, while the BOI 227 was docked at the Natchez-Adams County Port on May 14, 2014, the Port Commission had custody and control of the BOI 227 for unloading it (Doc. 16). On

May 14, 2014, inclement weather caused the Port Commission to suspend its unloading operation (Doc. 16). The BOI 227 was carrying sand that had only been partially unloaded by the Port Commission, leaving a disproportionate amount of weight on one side of the barge (Doc. 16). Vidalia contends the Port Commission failed to secure the BOI 227 properly (Doc. 16). The BOI 227 broke away from its mooring, and drifted down river (Doc. 16).

The Port Commission employed Vidalia to find the BOI 227 and tow it back (Doc. 16). Vidalia dispatched the M/V Bettye M. Jenkins to find and tow the BOI 227. Evans was part of the crew of the M/V Bettye M. Jenkins (Docs. 16, 32). The BOI 227 was found grounded on a riverbank a few miles downstream from the port (Docs. 16, 32).

Vidalia alleges that, upon inspection, the BOI 227 had broken and missing hatch dogs and one of the hatch covers did not seal properly (Docs. 16, 32). Vidalia believed it could tow the BOI 227 and attempted to do so at a proper speed, but the bow dipped underwater (due to the disproportionately loaded sand) and water entered through the unsealed bow hatches (Docs. 16, 32). The M/V Betty Jenkins called for assistance, the M/V Sonny J arrived, and two crewmembers unsuccessfully attempted to remove the water from the BOI 227 with a pump (Docs. 16, 32). The crewmembers returned to their tugs (Docs. 16, 32). When the BOI 227 sank, the M/V Betty Jean was tossed, causing Evans to fall on deck and sustain an injury (Docs. 16, 32).

Vidalia contends that Oakley failed to maintain the BOI 227 in a seaworthy condition, and was negligent in failing to do so (Docs. 16, 32). Oakley contends it does not owe a duty of seaworthiness to Vidalia, and that Vidalia's negligence claims are repetitive of its seaworthiness claims.

## II. Law and Analysis

### A. Standards governing the Motion to Dismiss.

A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges Plaintiff's right to relief based upon those facts. See Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Hirras v. National Railroad Passenger Corp., 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231 (1994); Doe, 753 F.2d at 1102. Courts must presume that general allegations embrace the specific facts that are necessary to support the claim. See National Organization for Women, Inc. v. Scheidler, 510 U.S. 249 (1994) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)). For purposes of a motion to dismiss for failure to state a claim, the factual allegations of the complaint must be taken as true and any ambiguities must be resolved in favor of the plaintiff. See Doe v. U.S. Dept. of Justice, 753 F.2d 1092, 1101 (D.C.Cir. 1985).

>   B.  Vidalia's negligence claim for unseaworthiness is not foreclosed by dismissal of its absolute liability claim for unseaworthiness.

Oakley argues that Vidalia's negligence claim is identical to its unseaworthiness claim, that Vidalia alleges only that the BOI 227 was unseaworthy, and that the unseaworthiness claim has already been dismissed.

Oakley contends that, as stated in the previous Report and Recommendation (Doc. 38), Oakley did not owe a duty of seaworthiness to Vidalia and the District Court dismissed those claims, holding there was a contract of salvage rather than of towage. The Fifth Circuit affirmed that holding, citing Fort Myers Shell & Dredging Co. v. Barge NBC 512, 404 F.2d 137 (5th Cir. 1968). The Fifth Circuit held Oakley owed no duty of seaworthiness to Vidalia and Evans because Vidalia was acting under a contract of salvage rather than of towage. The Fifth Circuit held that BOI 227 was subject to a marine peril, which created a salvage operation.

Vidalia contends it is alleging a negligence claim that is separate from the absolute, or non-negligent, liability claim of unseaworthiness. Vidalia does not argue that Oakley is liable to it under an absolute liability duty of seaworthiness. Instead, Vidalia argues that Oakley is liable in negligence and must "answer for the substandard condition of an Oakley barge, the BOI 227, which caused, in part, [Evan's] personal injuries." Vidalia lists the "broken front forward hatch, missing, broken and frozen dogs, [and] the inability of the front hatch to make a proper seal." Vidalia claims Oakley was aware of the unseaworthy condition of the BOI 227 and failed to repair it. Vidalia further alleges that the combination of the unseaworthy condition of the BOI 227, the river conditions, and likely human intervention (the

6

Port Commission) created a foreseeable risk of harm. Vidalia did not specify the river conditions involved or the "foreseeable risk of harm."

Vidalia argues that maritime law holds Oakley accountable based on its actual or constructive knowledge, as well as for its failure to exercise reasonable care, in contrast to an unseaworthiness claim that holds the vessel owner liable regardless of knowledge (Doc. 48). Vidalia contends it stated a prima facie case of negligence against Oakley.

A Jones Act seaman may sue third parties for general maritime law negligence. See Becker v. Tidewater, Inc., 335 F.3d 376, 387 (5th Cir. 2003). Maritime law applies general negligence principles. See James v. SHRM Catering Servs., Inc., 2013 WL 4407540, at *3 (W.D. La. 2013) (citing Oliver v. Weeks Marine, Inc., 2011 WL 2413498, at *1 (E.D. La. 2011)). Therefore, Vidalia's (Evans's) negligence claim arises in maritime tort for Oakley's breach of duty of reasonable care under the circumstances. See Smith v. Harbor Towing & Fleeting, Inc., 910 F.2d 312, 314 (5th Cir. 1990), cert. den., 499 U.S. 906 (1991). Maritime negligence law includes salvage. See Withhart v. Otto Candies, L.L.C., 431 F.3d 840 (5th Cir. 2005).

A ship owner-employer has a right of indemnity or contribution for the amount paid for maintenance and cure for its seaman who was injured by the negligence of a third party. See Fed.R.Civ.P. Rule 14(c); see also Simpson Timber Co. v. Parks, 390 F.2d 353, 570-71 (9th Cir. 1968), cert. den., 393 U.S. 858 (1968) (admiralty law allows innocent ship owner's claim for indemnity from third-party tortfeasor for seaman's or longshoreman's injuries); Seely v. City of New York, 24 F.2d 412, 413 (2d Cir. 1928).

Maritime law provides for tort indemnity where there is no negligence or only passive negligence attributed to the indemnitee. See Tri-State Oil Tool industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178, 186 (5th Cir. 1969).

Therefore, Vidalia may allege a claim for maritime negligence, that created an unseaworthy vessel, against Oakley.

    C.    **Vidalia failed to state a claim against Oakley for maritime negligence.**

To establish maritime negligence, a plaintiff must demonstrate: (1) there was a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) injury sustained by the plaintiff; and (4) a causal connection between the defendant's conduct and the plaintiff's injury. See James, 2013 WL 4407540, at *3 (citing Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000)).

A tortfeasor is accountable only to those to whom a duty is owed. Duty is measured by the scope of the risk that negligent conduct foreseeably entails. The risk of foreseeability is whether the harm that does occur is within the scope of danger created by the defendant's negligent conduct. See Huntsman, LLC v. Blessey Marine Serv., Inc., 2016 WL 1031330, at *5 (E.D. La. 2016) (citing Oliver, 2011 WL 2413498, at *1). The "scope of danger" consists of the natural and probable risks that a reasonable person would likely take into account in guiding his practical conduct. See Huntsman, LLC, 2016 WL 1031330, at *5 (citing In re Signal Intern., 579 F.3d at 491-92).

When determining whether a risk is within the scope of danger, the court should consider the general types of harm and classes of persons within the scope of

danger created by the negligence, while accounting for probable or anticipated natural forces. See Huntsman, LLC, 2016 WL 1031330, at *5 (citing In re Signal Intern., 579 F.3d at 492). Therefore, the foreseeability inquiry focuses on "general classes of harms and victims." See Huntsman, LLC, 2016 WL 1031330, at *5 (citing In re Signal Intern., 579 F.3d at 492).

Vidalia has not alleged what duty was owed by Oakley to Evans, as a crewman on the salvor vessel M/V Betty M. Jenkins, and none has been identified. Instead, Vidalia continues to argue that Oakley owed a duty to the M/V Betty M. Jenkins and its crew because it was the tug for the BOI 227. However, that claim has been foreclosed by the Fifth Circuit.

The reason for the salvage of the BOI 227 was the vessel's known, perilous condition.[2] Vidalia was aware of the vessel's imperilment when it accepted the salvage contract and sent the M/V Betty M. Jenkins to find the barge. Vidalia admits the crew of the M/V Betty M. Jenkins quickly became aware that the BOI 227 was sinking. The M/V Betty M. Jenkins was tossed by the resulting water displacement. Therefore, the issue is whether Oakley owed a duty to the crew of the M/V Betty M. Jenkins to keep its barge in a seaworthy condition, so that the barge would not sink and create a wave or surge that tossed nearby vessels, thereby exposing the crews of the salvor vessels to the risk of injury caused by the water displacement.

---

[2] The same reasoning applies to a Jones Act claim for maintenance and cure. There is no duty to furnish a seaworthy ship to a seaman who was on the vessel knowing it to be unseaworthy, and was on board because of its unseaworthiness. See Grigsby v. Coastal Marine Serv. Of Tex., Inc., 412 F.2d 1011, 1030 (5th Cir. 1969), cert. den., 396 U.S. 1033 (1970).

Oakley did not owe a duty to Evans, a crew member of the M/V Betty M. Jenkins, to prevent the BOI 227 from sinking, displacing the water, and tossing the M/V Betty M. Jenkins. The crew was near the sinking barge because Vidalia accepted a contract to salvage the BOI 227, and the M/V Betty M. Jenkins placed itself in near proximity to a sinking vessel.

Oakley, as the owner of the sinking barge that required a salvage service, did not owe a duty of reasonable care to protect the crew of the salvage vessel from the displacement of water caused by the BOI 227 sinking. Therefore, Vidalia's negligence claim against Oakley should be denied.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Oakley's motion to dismiss Vidalia's negligence claim (Doc. 44) be GRANTED and that Vidalia's negligence claim against Oakley be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __17th__ day of October, 2016.

                                           Joseph H.L. Perez-Montes
                                           United States Magistrate Judge